| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**FOR THE DISTRICT OF COLUMBIA**<br>----------------------------------------------------------------x<br>STACEY PILLING,<br>                            Plaintiff,<br><br>           - against –<br><br>LLOYD AUSTIN, as U.S. SECRETARY OF<br>DEFENSE, and PETER FOREMAN individually<br>and in his official capacity.<br><br>                   Defendants.<br>----------------------------------------------------------------x | ) **COMPLAINT**<br>)<br>)<br>)<br>)<br>) **Case Number.:**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**(Title VII Civil Rights Violations: Hostile Work Environment, Sexual Harassment; DC Human Rights Act Violations; Battery; Intentional Infliction of Emotional Distress)**

## JURISDICTION AND VENUE

1.    Jurisdiction is vested in this Court pursuant to 28 U.S.C. 1331 as Plaintiff's civil action arises under the Constitution, laws or treaties of the United States.

2.    Venue in this judicial district is appropriate insofar as the events, acts and/or omissions giving rise to Plaintiff's claims including but not limited to the acts of harassment and retaliation, occurred within this jurisdiction.

3.    This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. 1367(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.    28 U.S.C. § 2675(a), also known as the Federal Torts Claims Act ("FTCA"), states that:

> "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final

1

> disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section…"

This concept is also known as the exhaustion of administrative remedies.  There is also a similar provision, 42 U.S.C. § 2000e-5, requiring a Plaintiff to file a charge letter with the Equal Opportunity Employment Commission (EEOC) prior to filing a civil action pursuant to Title VII of the Civil Rights Act of 1964.

5.     On June 3, 2019, the United States Supreme Court clarified that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one and not a jurisdictional prescription delineating the adjudicatory authority of courts" (see *Fort Bend County, Texas v. Davis, 139 S. Ct. 1843 (2019)*).  In other words, the courts retain jurisdiction over Title VII claims irrespective of the procedural history of EEOC complaints.

6.     On or about, July 16, 2021, the Plaintiff contacted the Defense Logistics Agency (DLA) Headquarters Sexual Assault Response Coordinator (SARC), Ms. Bethrece Cheek, about her allegations against various DLA officials.  In sum and substance, Ms. Cheek stated that she believed the Plaintiff's allegation fell under the purview of the Equal Opportunity Employment Commission (EEOC).

7.     On or about July 19, 2021, the Plaintiff approached Dr. Angela Curtis who was the Deputy Director of the EEOC at the Defense Logistics Agency (DLA), where the Plaintiff was employed.  Dr. Curtis said to the Plaintiff, in sum and substance, that she did not believe that the Plaintiff's claims fell under EEOC and stated it was more pertinent to Human Resources (HR).

8.     On or about July 21, 2021, the Plaintiff spoke to Jose Cavazos who was the HR Customer Account Manager (CAM) for Disposition Services at the DLA and Mr. Cavazos replied that HR was going to start an investigation into the Plaintiff's claims.

9.     On or about April 1, 2022, the Plaintiff set up a meeting with the DLA Chief of Staff, Mr. Eric Smith.  Mr. Smith stated that he had heard about the EEO/SARC complaint but then did not say why the agency had not acted upon the Complaint. He then had the DLA Office of the Inspector General (OIG) initiate an investigation.

10.    On April 21, 2022, a DLA official other than the Plaintiff contacted the DLA OIG office and reported that the Plaintiff had informed this official about experiencing toxic leadership and a hostile work environment while working at Disposition Services in the DOD office located in Battle Creek, MI.

11.    On April 26, 2022, the Plaintiff corresponded with DLA OIG Special Agent David York for the purpose of making and confirming the content of a written complaint against DLA officials who had been harassing her.

12.    On June 29, 2022, the Plaintiff was interviewed by Special Agent York as a part of his investigation into the Plaintiff's allegations.

13.    On or about May 1, 2023, the Plaintiff filed a Freedom of Information Law (FOIL) request to the DLA requesting a copy of all of the investigation records available from the OIG.

14.    On or about August 23, 2023, the Plaintiff received these OIG records in a partially redacted format.

15.    The OIG documents revealed an extensive investigation, which included thirty-one separate interviews, that found the Plaintiff's allegations against Mr. Peter Foreman, Chief of Staff, DLA Disposition Services, Battle Creek, MI to be ***"substantiated."***

16.    On September 14, 2023, the Plaintiff, through her legal counsel, wrote a letter to Special Agent York regarding obtaining a right to sue letter for the purpose of

commencing a civil action to recover damages that she suffered as a result of her claims.

17.     On September 27, 2023, Special Agent York replied to the Plaintiff's counsel in an email stating, "Mr. Glazer [sic], Apologies for the delayed response.  The offices that will be able to assist will be the EEO office (brenda.fleming@dla.mil) and the FOIA office (judith.mansfield@dla.mil)."

18.     On October 4, 2023, the Plaintiff, through her counsel, wrote to Ms. Brenda Fleming, the DLA's EEOC Complaint manager for the purpose of obtaining a right to sue letter.

19.     On October 4, 2023, Ms. Fleming replied to the Plaintiff's correspondence with an email stating, "Good Afternoon Attorney Glaser, After a review of DLA's EEO database, there was no records found in which your client initiated an EEO complaint. If you are requesting documents, please reach out to DLA's FOIA office at Making a FOIA Request (dla.mil)."

20.     On October 10, 2023, Plaintiff's counsel sent another email to Special Agent David York stating, "We reached out to the EEOC representative, Brenda Fleming, and she indicated that there are no EEOC complaints from Ms. Pilling on the record.  Obviously, OIG conducted an investigation seeing as we have obtained documents about it.  In fact, Dr. Pilling's claims were substantiated by the OIG report.  Does OIG conduct a parallel process without consulting with EEOC?  If so, how does that impact our ability to obtain a Right to Sue letter?"

21.     On October 17, 2023, Special Agent David York replied to Plaintiff's counsel by stating, "Mr. Glaser, Thank you for your email.  Please contact Ms. Flemming at the DLA HQ EEO office for any further questions you have about the Federal EEO

4

complaint process." Special Agent York would not respond to any more of the Plaintiff's counsel's emails.

22. On November 19, 2023, the Plaintiff's counsel sent another email to Ms. Fleming stating,

> "Ms. Fleming, I am writing to you for the purpose of filing a Charge of Discrimination on behalf of my, client, Dr. Stacey Pilling who is employed at the Defense Logistics Agency (DLA). Our prior correspondence indicated that you do not have any records of an EEOC complaint by Dr. Pilling. Please accept the attached documents as Dr. Pilling's formal charge of discrimination. As I described in my letter of representation, I believe that Dr. Pilling preserved her right to make a formal charge of discrimination because she contemporaneously raised these issues with an EEOC staff member, and her complaint was ultimately investigated by the Office of the Inspector General who found her allegations to be substantiated. We believe that the findings of the Office of the Inspector General also provides proper notice of discriminatory conduct on the part of various DLA officials. Please confirm receipt of this correspondence."

Attached to this email, there was a charge of discrimination letter signed by the Plaintiff. Ms. Fleming never responded to this email. It has been nearly two months since the Plaintiff's counsel's final email to the DLA EEOC and there has been no written confirmation regarding the status of this EEOC complaint.

23. Given all of the facts and circumstances surrounding the Plaintiff's diligent attempts to complain about discrimination and harassment directed at her while employed at the DLA, the Plaintiff believes that she has exhausted her administrative remedies pursuant to 28 U.S. Code § 2675(a), 42 U.S.C. § 2000e-5, and all other relevant statutes and now commences the present civil action.

## PARTIES

24. At all times relevant herein, Plaintiff Stacey Pilling was an adult resident and citizen of the State of Michigan and an employee of the Defense Logistics Agency.

25. Upon information and belief, Defendant Lloyd Austin, Secretary of the Department of Defense, (hereinafter referred to as the "Defendant Department of Defense") is, and at

all times relevant herein was, the employer of Plaintiff Stacey Pilling. Upon information and belief, Defendant Department of Defense is a public entity under the laws of the United States of America.

26. Upon information and belief, and at all times relevant herein, Defendant United States Department of Defense (hereinafter, "DOD" or "Department of Defense"), was a military organization operating under the laws of the United States of America and employed a number of individuals who sexually harassed and discriminated against Plaintiff. Defendant Department of Defense is the employer of persons who have committed intentional, reckless, negligent, harassing and other acts and/or omissions against the Plaintiff within the course and scope of their employment.  The Defense Logistics Agency (DLA)'s employees referenced herein operated under the control and supervision of the Department of Defense (DOD).  Therefore, Defendant is liable for the acts and/or omissions of its employees pursuant to respondent superior.

27. At all times relevant to the claims for relief presented herein, the Defendant was acting under the color of law pursuant to their authority and grants of power under the United States Constitution. Further, at all times relevant to the claims for relief presented herein, the Defendant was acting under the color of their authority either as the public entity or an official of the public entity.

28. At the time of the events alleged herein, Defendant Peter Foreman was an adult citizen, resident of the State of Michigan, and, as a Defense Logistics Agency (DLA) official was an employee of Defendant, DOD, and under the supervision and control of said Defendant.

## **STATEMENT OF THE FACTS**

29.    Defendant, DOD, hired the Plaintiff to serve as an employee in its Battle Creek, Michigan location on or about January of 2016.

30.    Defendant, DOD, promoted the Plaintiff to Director of the Defense Logistics Agency ("DLA") Disposition Services Resource Management within the DOD's Battle Creek, Michigan location on or about July of 2020.

31.    At all times relevant herein, Defendant Peter Foreman was the DLA Disposition Services' Chief of Staff under the DOD during the events at issue within this Complaint.

32.    At all times relevant herein, Defendant Department of Defense's employee Mike Cannon held the position of Director of the DLA Disposition Services Senior Executive Service.

33.    The Plaintiff started employment as the Deputy Director of Resource Management (hereinafter referred to as "RM") in July 2019, at the rank of GS-14, one grade below the Chief of Staff Peter Foreman who had a rank of GS-15, (hereinafter alternatively referred to as the "COS," "Foreman," or "COS Foreman").

34.    The Plaintiff's supervisor in this position was Ms. Connie Nowicki (RM Director, GS-15, retired). Ms. Nowicki, upon information and belief, retired 4 years earlier due to mistreatment and harassment by Defendant, COS Foreman.

35.    From July 2019 through July 2020, the harassment of the Plaintiff by Defendant COS Foreman was initiated.  The Plaintiff would be harassed during this period on an almost daily basis.

36.    On one particular occasion between July 2019 and July 2020, COS Foreman made disparaging comments about the Plaintiff's clothes and "why are you wearing golf

pants to work?" while the Plaintiff was wearing a pair of white and black checkered dress pants.

37.     Between July 2019 and July 2020, COS Foreman would frequently mock the Plaintiff's choice in clothing. On certain occasions during this time period, Foreman would call in the Director of Disposition Services in order to give him an opportunity to participate in the harassment.

38.     Between July 2019 and July 2020, COS Foreman also would also mock the Plaintiff's shoes. The Plaintiff owned a pair of grey loafers, and Foreman would consistently say that the leather strip along the toe box was made of duct tape.

39.     Between July 2019 and July 2020, COS Foreman would make comments about the Plaintiff's bodily functions when the Plaintiff used the bathroom closest to her office (which was also the closest one to Mr. Foreman's office).  The Plaintiff would enter this bathroom and the Foreman would respond by yelling "take air freshener with you" or "are you going to drop a load?" or "are you taking a deuce?" Foreman used these refrains frequently for the purpose of trying to embarrass and harass the Plaintiff, particularly when other DLA employees were within earshot.

40.     On many occasions between July 2019 and July 2022, COS Foreman had a "fart machine" placed under the conference room table or in the Plaintiff's office.  During this time, when the Plaintiff would begin talking, he would activate the fart machine for the purpose of embarrassing and humiliating the Plaintiff.

41.     On or about October 10, 2019, Ms. Nowicki was out of the office and the Plaintiff was going to brief the incoming Director for Defense Logistics Agency (DLA) Vice Admiral Michelle Skubic.  The Plaintiff had specific slides related to the strategy plan to discuss. During a dry run with talking point notes which the Plaintiff had prepared,

COS Foreman said in a loud tone with the other directors present that the Plaintiff was not going to present what she had prepared.  Foreman then proceeded to provide the Plaintiff with talking-point notes that fit his narrative. This was extremely embarrassing to the Plaintiff because Foreman belittled the Plaintiff in front of a room full of GS-15s and GS-14s (senior leaders at Disposition Services), which is alleged to be completely due to the Plaintiff's gender.

42.    On or about March 2020, the Plaintiff was walking back into her office and there was a very strong smell of sewer.  The Plaintiff then walked next door to Ms. Nowicki's office to ask her if her office smelled too.  Ms. Nowicki replied that her office did not smell badly and that the smell was coming from the Plaintiff's side of the hallway and specifically her office. The scent was extremely odious, and as a result, Ms. Nowicki sent the Plaintiff home for the rest of the day.  The Plaintiff later learned that COS Foreman had put a "fart bomb" in her garbage while she had stepped out. When the Plaintiff confronted Foreman, he initially denied engaging in the alleged behavior but later said it was him while laughing.

43.    On or about July 30, 2020, the Plaintiff was promoted to the Director of Resource Management as a GS-15 employee. The Plaintiff's supervisor was Mr. Michael Cannon, SES, Director Disposition Services. In the organizational chart, the Plaintiff was the same grade and level as COS Foreman although his position as the COS was artificially elevated so that he had operational control.  Administrative control still fell to Mr. Cannon as he still did performance appraisals and administrative tasks as the direct supervisor.

44.    Every quarter from July 2020 through May 2022, the Plaintiff would spend numerous hours in the conference room with various division chiefs (including Nina Ekblad,

Deputy Director RM and currently Director, Business Support and Lieutenant Colonel Harold Hobgood, retired) correcting the color of yellow/red/green on all of the strategy plan PowerPoint slides for presentations to senior leaders so they were all the same shades of color (for presentations to Mr. Cannon and external senior leaders). At each quarterly meeting, when reviewing slides, COS Foreman would openly make disparaging comments about the Plaintiff's intellect.  Foreman would review each slide until he found a mistake (even if the slide was produced by one of the Plaintiff's peers) and then call the Plaintiff into his office and belittle her about how she has a PhD and didn't even see the mistakes. "You need to do better!" was a common refrain by Foreman.  COS Foreman would frequently engage in this form of harassment. Thus, the Plaintiff dreaded quarterly strategy plan reviews. Furthermore, Foreman would consistently state that the Plaintiff's narration concerning the slides was not good enough and that the Plaintiff needed to review the slides presented by her peers to make sure that the ones she presented were 100% proper.  It is alleged herein that these experiences specifically were intended to harass the Plaintiff based on her gender.

45.     Between July 2020 and October 2021, the harassment continued on an almost daily basis.  COS Foreman would continue making disparaging comments about the Plaintiff's clothes on a regular basis, including the aforementioned comment, "why are you wearing golf pants to work?", as well as mocking other items of clothing on a regular basis.  Foreman would also contact third parties at the DLA for the purpose of mocking the Plaintiff in front of him, including the Director of Disposition Services. During this period, Foreman also would make comments about bodily functions when the Plaintiff used the bathroom closest to her office (which was also the closest one to

his).  When the Plaintiff would enter the bathroom, Foreman would yell "take air freshener with you" or "are you going to drop a load?" or "are you taking a deuce?" Foreman had several lines that he repeated frequently in an effort to embarrass and harass the Plaintiff, particularly in front of the Plaintiff's peers.

46.    On or about August 15, 2020, while the Plaintiff was on leave for a week, COS Foreman left a dead bat on the Plaintiff's desk.

47.    On or about Sept 11, 2020, during the Disposition Services 9/11 ceremonial events held in the courtyard of Disposition Services, COS Foreman loudly, and before all Disposition Services employees attending the event stated, while laughing out loud: "Look at those chicken legs – they are blinding me.  So white."  At this event, the Plaintiff was wearing running shorts because there was a 5K run immediately after the ceremony.  COS Foreman went out of his way to humiliate her at this event in front of numerous people.  At the start of the 5K event, Foreman openly and in a loud tone repeatedly stated "you are so slow… I could walk faster," and continuously taunted the Plaintiff before, during, and after the race about her running pace. The Defendant, Peter Foreman's blatant hypocrisy while making these comments is supported by the fact that he personally did not partake in the 5K run.

48.    On December 7, 2020, the Plaintiff was sitting at the directors' conference table with DLA senior leaders present and COS Foreman at the head of the table. Each director was providing a status update for their directorates. The Plaintiff was approximately the seventh person scheduled to brief the room.  When it was the Plaintiff's turn to present her report, Foreman began by asking the Plaintiff what day it was.  The Plaintiff responded, "Tuesday" and then Foreman repeated again "What day is it?" in a louder tone.  The Plaintiff replied that she did not know what he meant.  The

Plaintiff then proceeded to state how ignorant the Plaintiff was because December 7th was the anniversary of the Pearl Harbor attacks on the Unites States.  Foreman then stated, "You think you are so smart because you have a PhD but you don't know anything."

49.   On December 7, 2020, after the above incident, the Plaintiff received phone calls from her peer, John Bechum, Information Operations retired, and Rolland Taft, Information Operations stating in sum and substance they did not agree with how the COS Foreman was treating her. One of the Plaintiff's peers stated, "I would never want anybody to talk to my daughter the way he talks to you. It is not acceptable, and we wanted to let you know we do not agree with it."

50.   On or about January 2021, the Plaintiff confronted COS Foreman about the constant harassment and Foreman replied, "Yes, I am going to be harder on you, I expect more from you than your peers!"

51.   The within actions point to the constant gender discrimination endured by the Plaintiff at the hands of Defendant, COS Foreman of the DLA.

52.   On or about March 2021, while the Plaintiff was sitting at her desk, COS Foreman and Andrew Van Koevering (executive assistant to Mr. Cannon) walked into the Plaintiff's office and Foreman proceeded to throw a live cockroach towards the Plaintiff's breast area. The cockroach quickly scurried down under her desk.  Mr. Van Koevering then captured the cockroach and removed it from the Plaintiff's office. Foreman was laughing about the situation the entire time.

53.   On or about April 29, 2021, while the Plaintiff was on temporary deputy assignment with Col. Franyate Taylor, United States Army Deputy Director of Disposition Services and Timothy Dauten, Division Chief of Operations for a site visit.  At the

dinner, the Plaintiff discussed a specific event related to training (see attached), but then also talked about the harassment from COS Foreman.  Col. Taylor advised the Plaintiff to make her complaint to Mr. Cannon as he is both the Chief of Staff and the Plaintiff's supervisor.  That evening, the Plaintiff sent Mr. Cannon an email stating that she needed to speak with him about COS Foreman upon the Plaintiff's return to the office. Mr. Cannon acknowledged the Plaintiff's request but then stated he would be out of the office, and we would speak to the Plaintiff upon his return.  Preparing the email was an emotionally stressful experience because COS Foreman was rarely challenged by the Plaintiff's peers. If challenged, the Foreman would frequently retaliate. Foreman led by fear. Although his position was the COS, thus third in the office's chain of command, Foreman had command and control of Disposition Services for all intents and purposes.  Foreman oversaw every aspect of the agency. Therefore, the Plaintiff was jeopardizing her career by complaining about COS Foreman to other DLA staff members.

54.    On May 21, 2021, the Plaintiff finally met with Mr. Cannon to discuss the email from April 29, 2021.  The Plaintiff listed a host of examples related to clothes, hair, shoes, running, 9/11 comments about her skin, and other disparaging remarks. Mr. Cannon listened but then quickly replied, "I will talk to him."

55.    On or about June 15, 2021, Mr. Cannon came into the Plaintiff's office and asked "how is [Mr. Foreman] doing? I talked to him…" At first, the Plaintiff responded with, "ok" but then later corrected the statement, and informed Mr. Cannon that his behavior and harassment had not changed.  Mr. Cannon replied, "I will talk to him again."

56.     On July 1, 2021, COS Foreman put the Plaintiff in a head lock two times in the
        presence of Nina Ekblad. He did this "jokingly" despite the Plaintiff asking him to
        stop and was doing this in response to the Plaintiff saying, "sometimes you need to
        slowdown and take a break".

57.     On or about July 2, 2021, the Plaintiff informed Mr. Cannon about COS Foreman
        placing her in a headlock, and replied, "He can't do that!" and the Plaintiff replied
        "well, he did."

58.     On July 16, 2021, the Plaintiff contacted the DLA Headquarters Sexual Assault
        Response Coordinator (SARC), Ms. Bethrece Cheek. The Plaintiff had Nina Ekblad
        (The Plaintiff's Deputy Director in Resource Management) in the office with her
        when the Plaintiff called for support. The Plaintiff provided all background
        information including the dating checklist and then spoke to the Disposition Services
        SARC with her response was "I can only talk to Mr. Cannon when he is in a listening
        mode, otherwise he does not listen". The Plaintiff discussed harassing statements
        including clothing, education, shoes, bathroom comments, and other disparaging
        statements.  Ms. Cheek said that she did not believe that issues raised by the Plaintiff
        were related to SARC.  She felt they fell under EEO.  She then referred the Plaintiff
        to Dr. Curtis.

59.     On July 19, 2021, the Plaintiff spoke with Dr. Curtis from EEO at DLA Headquarters.
        The Plaintiff explained the history again.  Dr. Curtis replied that she did not feel that
        the issue fell under EEO and she stated the issues being presented fell within the
        Human Resources Department's purview.  The Plaintiff was then sent the anti-
        harassment policy DLAI 1438.06 Effective October 20, 2015 (most recent update

being DLAI 1438.06 effective date June 2022).  It is alleged that this circumvention of proper procedure was purposeful.

60.     On July 21, 2021, the Plaintiff reviewed the policy.  At this point, the Plaintiff believed that she was purposely being subjected to a bureaucratic runaround and there were no DLA officials whom she could approach about the issues that she was experiencing.  The Plaintiff printed out two copies of the policy and put one on the desk of the Director Mr. Cannon, and the other on the desk of the Deputy Director Col. Taylor.

61.     On July 21, 2021, the Plaintiff spoke to the HR Customer Account Manager (CAM) for Disposition Services, Mr. Joe Cavazos, to state that the Plaintiff had talked to several people (as identified above) and wanted to now complain about the workplace harassment though the DLA's Human Resources Department.  Mr. Cavazos was aware of the harassment over the years as well.  Mr. Cavazos has since left the agency due to other legal issues.

62.     On July 26, 2021, the Plaintiff spoke to Col. Taylor again to bring her up to date on the headlock incidents and continued harassment.  The Plaintiff also mentioned the anti-harassment policy. Col. Taylor replied "interesting, this was brought to my attention (the policy) yesterday".

63.     On July 27, 2021, the Plaintiff spoke with Mr. Cannon again. The Plaintiff updated him about the issue with the headlocks, and Mr. Cannon's response was "he can't touch you…" Mr. Cannon further stated at this meeting that he would like to speak to COS Foreman again. The Plaintiff also brought up the fact that the issues being raised were not new and had been previously documented in the Denison Survey for many years.  Also, the Plaintiff mentioned that if Mr. Cannon were to speak with other

15

senior DLA leaders, these leaders would provide examples as well assuming they were being candid.  The issues that the Plaintiff was referring to is not new, but the Plaintiff just happened to be the only one raising the issues.  Mr. Cannon stated that he would talk to COS Foreman again. Mr. Cannon also stated that he had documentation of discussions he previously had with COS Foreman about his leadership style many times.  Mr. Cannon also repeated the frequent refrain of "keep in mind he has 30+ years of his leadership style – it will not change overnight."

64.     On July 30, 2021, COS Foreman was in the Plaintiff's office while the Plaintiff was on a phone call and asked the Plaintiff several times if she needed to be put in a head lock. The Plaintiff replied by repeating "No, No I do not. Do not touch me."

65.     On or about August 15, 2021, the Plaintiff left Disposition Services to relocate to DLA headquarters. Prior to leaving HR representative Mr. Cavazos stated HR was going to start an investigation regarding the harassment that the Plaintiff had discussed with him in July of 2021.

66.     On or about November 15, 2021, the Plaintiff had not heard anything about an investigation, so the Plaintiff decided to ask the Director of HR Ms. Tanya Everett (has since left to the Department of Defense) at HQ. After reviewing open cases, she stated there was no investigation from the Plaintiff or with COS Foreman regarding Disposition Services.

67.     On or about May 10, 2022, one of the Plaintiff's first line supervisors from Disposition Services walked out after a very contentious meeting with COS Foreman where the Foreman was belittling him in front of people. He walked out that day and resigned. After the Plaintiff processed this, she decided that she needed to try again.

68.    On or about April 4, 2022, the Plaintiff set up a meeting with the DLA Chief of Staff, Mr. Eric Smith, SES. Mr. Smith stated he had heard about the EEO/SARC complaint but then did not say why nothing was done. He then requested that DLA OIG initiate an investigation. The investigation was completed in December 2022.

69.    On or about June 1, 2023, the Plaintiff asked for an update, because she had not heard anything about the investigation from anyone.

70.    On or about June 7, 2023, the Plaintiff emailed Mr. Smith, and again asked for an update. Mr. Smith replied by stating that all of the Plaintiff's allegations were found to be substantiated and that his team was still working through disciplinary actions.

## COUNT I

### (Sexual Harassment Under Title VII: All Defendants)

71.    Plaintiff incorporates all previous paragraphs and further alleges that she was an employee of Defendant Department of Defense. Plaintiff further allege that this claim arises under Title VII of the Civil Rights Act of 1964, 701 et seq., and 42 U.S.C.A. 2000e et seq.

72.    Plaintiff further alleges that Defendant Department of Defense's employees, inter alia, including Defendant COS Foreman, frequently subjected Plaintiff to sexually harassing behavior, including but not excluding, touching Plaintiff's body in an inappropriate and unwelcome sexual manner; making explicit comments concerning the Plaintiff' s appearance; and stating explicit and sexual comments made to the Plaintiff.

73.    Plaintiff further alleges that all of the harassing actions taken by Defendant Department of Defense's employees were unwanted, unprovoked and unwelcome.

74.     Plaintiff further alleges that the Plaintiff as a woman, belonged to a protected group and/or class under Title VII; she was the subject of unwelcome sexual harassment; the harassment complained of was based on her sex; and that the harassment was sufficiently severe to unreasonably interfere with her work performance or create an intimidating, hostile, or offensive work environment.

75.     Plaintiff further alleges that the Defendant Department of Defense's employees engaged in harassment, combined with the Defendant's institutional refusal to address, correct and/or to prevent Defendant Department of Defense's employees' conduct at any level, and made it perfectly clear that the Plaintiff's employment was conditioned on accepting the sexual harassment.

76.     Plaintiff further alleges that Defendant Department of Defense knew or should have known from the many complaints against the Defendant's employees, of the sexual harassment and should have taken reasonable steps to correct the situation, but willfully failed to do so and was unwilling to initiate a real investigation or properly report the harassment of a senior employee.

77.     As a direct and proximate result of the Defendant's acts and/or omissions, the Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to, severe emotional distress, depression, humiliation, embarrassment, and other related physical injuries.

78.     As a further direct and proximate result of the Defendants' actions and/or omissions, the Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages and a loss in her wage-earning capacity.

## COUNT II

### (Hostile Work Environment Under Title VII: All Defendants)

79.  Plaintiff incorporates all previous paragraphs as though fully set forth herein and further alleges that the Defendant discriminated against the Plaintiff based on, inter alia, her sex, age and personal appearance, all of which are protected classes under Title VII of the Civil Rights Act of 1964, 701 et seq., and 42 U.S.C.A. 2000e et seq.

80.  Plaintiff further alleges that she was subject to unwelcome harassment in the form of, inter alia, the Defendant's frequent verbal abuse, unwanted suggestive touches, explicit sexual comments; and retaliatory disparate and discriminating treatment.

81.  Plaintiff further alleges that Defendant Department of Defense's employees singled the Plaintiff out because she was a younger, attractive woman, all attributes of membership in the protected classes mentioned above.

82.  Plaintiff further alleges that the Defendant's harassment was so severe and widespread that it effectively created an immense emotional burden on Plaintiff as a condition of her continued employment by the Defendant.

83.  Plaintiff further alleges that the Plaintiff, as a woman, belonged to a protected group under Title VII; she was the subject of unwelcome sexual harassment; the harassment complained of was based on her sex; and that the harassment was sufficiently severe to unreasonably interfere with her work performance or create an intimidating, hostile, or offensive work environment.

84.  Plaintiff further alleges that Defendant Department of Defense knew or should have known from the many complaints against Defendant COS Foreman, about his

offensive behavior and should have taken reasonable steps to correct the situation, but willfully failed to do so.

85.   Plaintiff further alleges that she received disparate treatment by the Defendant due to her gender. Plaintiff, due to her gender, was not able to enjoy the same rights and benefits of employment that were given to other employees of Defendant Department of Defense.

86.   As a direct and proximate result of the Defendants' acts and/or omissions, the Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including, but not limited to, severe emotional distress, depression, humiliation, embarrassment and other related physical injuries.

87.   As a further direct and proximate result of the Defendants' actions and/or omissions, the Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages and a loss in her wage-earning capacity.

## <u>COUNT III</u>

### (Sexual Harassment under DC Human Rights Act: All Defendants)

88.   Plaintiff incorporates all previous paragraphs as though fully set forth herein and further alleges that she was an employee of the Defendant Department of Defense. Plaintiff further alleges that this claim arises under D.C. Code 2-1401.01, et seq.

89.   Plaintiff further alleges that the Defendant COS Foreman and other employees of Defendant Department of Defense, inter alia, frequently touched Plaintiff in an inappropriate and unwelcome sexual manner and made inappropriate and unwelcome sexual advances.

90.    Plaintiff further alleges that all of the harassing actions taken by the Defendant COS
       Foreman and other employees of the Defendant were unwanted and unwelcome.

91.    Plaintiff further alleges that Defendant Department of Defense's employees'
       harassment, combined with the Defendant Department of Defense's institutional
       refusal to address, correct and/or to prevent the Defendant COS Foreman or others to
       engage in the offensive conduct referenced to at any level, made it perfectly clear that
       the Plaintiff's employment was conditioned on accepting the Defendant COS
       Foreman and other employees' actions.

92.    Plaintiff further alleges that the Defendant Department of Defense knew or should
       have known from the many complaints against the Defendant COS Foreman and
       others, about their actions and should have taken reasonable steps to correct the
       situation, but willfully failed to do so.

93.    As a direct and proximate result of the Defendants' acts and/or omissions, the Plaintiff
       has sustained numerous physical injuries some of which are permanent in nature,
       including but not limited to, severe emotional distress, depression, humiliation,
       embarrassment, and other related physical injuries.

94.    As a further direct and proximate result of the Defendants' actions and/or medical
       care and attention, the Plaintiff has suffered and will continue to suffer much physical
       pain and mental anguish, and has suffered a loss of wages and a loss in her wage-
       earning capacity.

## COUNT IV

**(Hostile Work Environment under DC Human Rights Act: All Defendants)**

95.    Plaintiff incorporates all previous paragraphs as though fully set forth herein and
       further alleges that the Defendants discriminated against the Plaintiff based, inter alia,

her sex, age and personal appearance, all of which are protected classes under the

D.C. Human Rights Act.  Plaintiff further alleges that this claim arises under D.C.

Code 2-1401., et seq.

96.   Plaintiff further alleges that she was subject to unwelcome harassment in the form of,

inter alia, the Defendant COS Foreman and other employees of Defendant's frequent

unwanted and inappropriately suggestive communications, suggestive touches, and

leering.

97.   Plaintiff further alleges that the Defendant COS Foreman and other employees of the

Defendant singled Plaintiff out because she was a younger, attractive woman, all

attributes of membership in the protected classes mentioned above.

98.   Plaintiff further alleges that the Defendants' harassment was so severe and widespread

that it effectively created an immense emotional burden on the Plaintiff as a condition

of her continued employment by Defendant Department of Defense.

99.   Plaintiff further alleges that the Defendant Department of Defense knew or should

have known about their employees' offensive behavior and should have taken

reasonable steps to correct the situation, but willfully failed to do so.

100.   Plaintiff further alleges that she received disparate treatment by the Defendant COS

Foreman and other employees of Defendant Department of Defense, due to her age,

gender and appearance.

101.   As a direct and proximate result of the Defendants' acts and/or omissions, the Plaintiff

has sustained numerous physical injuries, some of which are permanent in nature,

including, but not limited to, severe emotional distress, depression, humiliation,

embarrassment and other related physical injuries.

102. As a further direct and proximate result of the Defendants' actions and/or omissions, the Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish, and has suffered a loss of wages and a loss in her wage-earning capacity.

## COUNT V

### (Battery: Defendant COS Foreman)

103. Plaintiff incorporates all previous paragraphs by reference as though fully set forth herein and further alleges that all physical contact she had with Defendant COS Foreman, including but not limited to those instances of forced kissing, groping and inappropriate touching between her legs, constituted individual touches.

104. Plaintiff further alleges that all such contact was highly offensive and indeed outrageous.

105. Plaintiff further alleges that Defendant COS Foreman initiated all such contact intentionally.

106. Plaintiff further alleges that she did not consent to any of the contract.

107. Plaintiff further alleges that the touches all arose as a result of Defendant COS Foreman supervisory position over Plaintiff.

108. As a direct and proximate result of Defendant Peter Foreman's unconsented physical contact, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including but not limited to, severe emotional distress, depression, humiliation, embarrassment, and other related physical injuries.

109. As a further direct and proximate result of Defendant COS Foreman's unconsented physical contact, the Plaintiff has incurred and will continue to incur substantial

expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish and has suffered a loss of wages and a loss in her wage-earning capacity.

## COUNT VI

### (Intentional Infliction of Emotional Distress: All Defendants)

110.   Plaintiff hereby incorporates, by reference, all of the foregoing paragraphs as though fully set forth herein and further alleges that the Defendants' conduct was intentional and reckless.

111.   Plaintiff further alleges that the Defendants' conduct was extreme and outrageous.

112.   Defendants' conduct is the proximate cause of the Plaintiff's emotional distress.

113.   As a direct proximate result of the Defendants' conduct, the Plaintiff suffered and continues to suffer severe emotional distress.

114.   As a direct and proximate result of the combined acts and/or omissions of the Defendants, the Plaintiff suffered extensive injuries, as set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages in the full and just amount of Three Million Dollars ($3,000,000.00), plus interest and costs; reasonable attorney's fees, along with such other relief as this Court deems just and proper.

### JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all of the above claims.

Respectfully submitted,

By: _____

Ezra B. Glaser & Associates
Ezra B. Glaser, Esq
*Attorney for Plaintiff Stacey Pilling*

3021 Fort Hamilton Parkway Suite#1R
Brooklyn, New York 11218
Tele: (212)385-9300
Email: ezra@ebgassociates.com